## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

DEAN BROWN,

      Plaintiff

      Case No. 1:25-cv-12575

v.

      Hon. Thomas L. Ludington

AARON HILT in his personal and official
capacity as Assistant Coach of Central
Michigan University Baseball,

      Defendant

_____/

## DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

NOW COMES, Defendant Aaron Hilt, by and through his attorneys, Fraser Trebilcock Davis Dunlap & Cavanaugh, P.C., and for his Motion for Rule 11 Sanctions states as follows:

1.    A motion for sanctions under Rule 11 must be brought separately from any other motions and must described the specific conduct that allegedly violates the Rule.  Fed. R. Civ. P. 11(c)(2).  "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  *Id*.

1

2.     Defendant Hilt hereby presents to the Court the Motion for Rule 11 Sanctions attached to the accompanying brief as **Exhibit A**, which was served, but not filed, on September 26, 2025.  As the Motion for Sanctions explained to Plaintiff and his attorney, the original Complaint in this matter (ECF No. 1) violated Rule 11(b)(2) and (b)(3) in numerous respects.  *See* **Exhibit A**.

3.     However, Plaintiff and his attorney failed to withdraw or appropriately correct all of the challenged claims and factual contentions within 21 days after service of the Motion for Sanctions.  Instead, on October 20, 2025, Plaintiff filed the First Amended Complaint (ECF No. 19), which merely repeated many of the challenged factual contentions and continued at least one of the challenged claims.

4.     Defendant Hilt sought concurrence in this motion from Plaintiff's counsel, but concurrence was not obtained.

WHEREFORE, Defendant Aaron Hilt respectfully requests that this Honorable Court GRANT his Motion for Rule 11 Sanctions, for the reasons more fully explained in the accompanying brief, which are incorporated herein by reference, and that the Court enter an Order awarding the sanctions requested in the brief for the violations of Rule 11(b)(2) and (b)(3) committed by Plaintiff and his attorney, Todd F. Flood and Flood Law, PLLC.

*Respectfully submitted*,

Dated: December 4, 2025          By:  */s/ Ryan Kauffman*
                                      Ryan K. Kauffman (P65357)
                                      Fraser Trebilcock Davis Dunlap &
                                      Cavanaugh, P.C.
                                      Attorneys for Defendant


## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I electronically filed the foregoing document with the United States District Court for the Eastern District of Michigan Northern Division, via Pacer, which said Pacer also serves a copy on all counsel of record.

                              */s/ C A Sczepanski*
                              C A Sczepanski

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

DEAN BROWN,

      Plaintiff                               Case No. 1:25-cv-12575

v.                                           Hon. Thomas L. Ludington

AARON HILT in his personal and official
capacity as Assistant Coach of Central
Michigan University Baseball,

      Defendant

_____

# DEFENDANT'S BRIEF IN SUPPORT OF
# <u>MOTION FOR RULE 11 SANCTIONS</u>

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF ISSUE PRESENTED ...................................................... ii

MOST APPROPRIATE AUTHORITY ........................................................................ iii

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 4

STANDARD OF REVIEW .......................................................................................... 8

LEGAL ARGUMENT ................................................................................................. 8

    I. PLAINTIFF AND HIS ATTORNEY HAVE VIOLATED RULE 11 ..................................... 9

        A.   Plaintiff's attorney violated Rule 11(b)(2) by including the § 1983 .............................. 9

        B.   Plaintiff and his attorney violated Rule 11(b)(3) by including factual contentions that Plaintiff suffered "retaliation." ...................................................................... 10

            *1. A comparison between the allegations in the First Amended Complaint and the information available to Plaintiff demonstrates that Plaintiff violated Rule 11(b)(3)* ..........................................................................................11

            *2. The recorded conversation between Plaintiff and the police officers further demonstrates a violation of Rule 11(b)(3)* ........................................... 15

            *3. Other recorded conversations further demonstrate the violation of Rule 11(b)(3).* ....................................................................................................... 17

    II. REQUESTED SANCTION FOR RULE 11 VIOLATIONS ............................................. 21

CONCLUSION............................................................................................................ 25

CERTIFICATION OF COMPLIANCE ....................................................................... 26

CERTIFICATE OF SERVICE ................................................................................... 26

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

On September 26, 2025, Defendants served, but did not file, their Motion for Rule 11 Sanctions in accordance with Fed. R. Civ. P. 11(c)(2).  (*See* **Exhibit A**). The motion is presented to the Court now because Plaintiff failed to take appropriate action to correct the violations within 21 days after service.  Instead, Plaintiff filed the First Amended Complaint (ECF No. 19), which merely repeated many of the challenged factual contentions and continued at least one challenged claim.

More specifically, Plaintiff's attorney violated Fed. R. Civ. P. 11(b)(2) by pleading the bodily integrity claim pursuant to 42 U.S.C. 1983. In light of the description of the incident as alleged in the First Amended Complaint, the bodily integrity claim was never warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.

Plaintiff and his attorney also violated Fed. R. Civ. P. 11(b)(3) by including factual contentions in the First Amended Complaint asserting that Defendant Hilt "retaliated" against Plaintiff by causing the police to investigate a threatening text message that Plaintiff sent to his teammate and by suspending Plaintiff from the baseball team.  After a reasonable inquiry under the circumstances, Plaintiff and his attorney either knew, or should have known, that the factual contentions that Plaintiff suffered retaliation lacked evidentiary support and would not have evidentiary support after an opportunity for further investigation and discovery.

## **MOST APPROPRIATE AUTHORITY**

- Fed R. Civ. P. 11

## **INTRODUCTION**

This case involves, at the absolute most, a "dignity tort" for nominal damages arising out of an allegedly offensive (but not harmful) touching.  Plaintiff, a former member of the Central Michigan University baseball team, alleges that on March 2, 2025, during a pregame routine, he and the other pitchers were lined up in the bullpen to receive "fist bumps" from the Assistant Coach, Aaron Hilt (ECF No. 19, PageID.179-180, ¶¶ 8-11).  As Coach Hilt reached Plaintiff's position in the line, Plaintiff was turned to his right talking to another teammate, so Coach Hilt delivered the fist bump to Plaintiff's chest to get his attention (*Id*., PageID.181, ¶¶ 13-14).

While Plaintiff describes this alleged "punch" to his chest by Coach Hilt in exaggerated and hyperbolic terms, it is not these allegations that violate Rule 11.  To be sure, Plaintiff's claim that Coach Hilt punched him in the chest with "great force" is complete fiction. However, it is Plaintiff's misrepresentations regarding the events that followed which warrant sanctions.

It is undisputed that the day after the incident, Plaintiff and Coach Hilt met for approximately an hour and discussed Plaintiff's concerns (ECF No. 19, PageID.182, ¶ 24). Following that meeting, for more than two weeks, Plaintiff expressed **no** dissatisfaction with the resolution of the matter to anyone on the coaching staff or in CMU's Athletic Department.  However, on or about March 19, 2025, Plaintiff – or someone acting on his behalf – submitted an anonymous Student-Athlete Well-

Being Awareness Report to the National Collegiate Athletic Association ("NCAA") claiming that Coach Hilt "punched" Plaintiff in the chest and that he suffered "visible abrasions." (**Exhibit B**, NCAA email, CMU0015-0016). The NCAA then notified CMU's Athletic Director, Amy Folan, about the report.[1]

In response, CMU immediately undertook an internal investigation through its Faculty Personnel Services ("FPS") (**Exhibit C**, FPS Investigative Report, CMU0031-0042). During the course of that investigation, one of Plaintiff's teammates, Liam Stumpf, informed FPS's investigator that he had seen photographs of bruising on Plaintiff's chest, which was allegedly caused by the fist bump from Coach Hilt, but that the photographs were "fake." (*Id.*, at CMU0039). Liam explained that another player had helped Plaintiff create the bruising by using a "cupping rehabilitation tool." (*Id.*, p. CMU0039). That information, of course, cast significant doubt on Plaintiff's groundless claim that Coach Hilt "punched" him.

When Plaintiff later learned that Liam had offered this information to the FPS investigator, Plaintiff sent Liam a text message stating "Time to die my friend." (**Exhibit D**, Threatening Text, CMU0029). Not surprisingly, in today's day and age, when a university student sends such a text message, and the message is reported as

---

[1] On March 17, 2025, Plaintiff also separately sent an email to Ms. Folan, asking to meet with her, but without mentioning Coach Hilt. (ECF No. 19, PageID.184, ¶ 32). Ms. Folan and her assistant responded to the email and tried to schedule the meeting, but Plaintiff failed to respond. (**Exhibit T**, Email chain, CMU0008-0010).

a potential threat, the police **will** investigate.  In this case, as part of the investigation by the CMU Police Department, which occurred over a span of less than 12 hours, Plaintiff was suspended from the baseball game that had been scheduled during the small window of time that the investigation was ongoing.  In response to that single game suspension, Plaintiff immediately quit the baseball team, moved out of his on-campus housing, and returned to his parents' home in Ohio.

Yet, in bringing this lawsuit, Plaintiff deliberately ignores these known facts. He claims that his text message to Liam Stumpf stating "time to die" was merely the baseball team's "hype-up mantra," but that rather than respond to the text "in a familiar manner," Liam instead reported the message to the police. (ECF No. 19, PageID.184-185, ¶¶ 35-36). Plaintiff also claims that "[a]gents of CMU" then used his text message to Liam "as a pretext to retaliate against him" for reporting that Coach Hilt assaulted him. (PageID.185, ¶ 36). Plaintiff falsely contends this "retaliation" included sending police officers to his dormitory and suspending him from the baseball team.  (*Id*., PageID.185-186, ¶¶ 35-41 and PageID.192, ¶ 75(b)).

However, these allegations are quickly disproved by the police body camera footage, which captured every interaction that the police officers had while investigating Plaintiff's text message to Liam.  The body camera footage establishes that Plaintiff had **never** previously sent the message "time to die" directly to anyone before he sent his text message to Liam.  Moreover, Plaintiff even admitted to the

police officers that he sent the message to Liam *because* he was angry that Liam told the FPS Investigator that he had faked the bruising in the photographs of his supposed injury.  It was **not** the friendly greeting that Plaintiff claims it was.

To make matters worse, in the pleadings that were filed in this matter, Plaintiff and his attorney also attempted to characterize Coach Hilt's fist bump to Plaintiff's chest as a violation of bodily integrity under 42 U.S.C. § 1983. However, such a claim was never "warranted by existing law" or by a "nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

Simply put, Plaintiff and his attorney violated Rule 11 in multiple respects. Furthermore, they had ample opportunity to take appropriate corrective action to remedy the violations but refused to do so.   Accordingly, sanctions are warranted.

## STATEMENT OF FACTS

Plaintiff filed this action on August 19, 2025 (ECF No. 1).  With the original complaint, Plaintiff asserted various federal and state-law claims against Coach Hilt, as well as against Amy Folan, Jacob Sabol (the head coach of CMU's baseball team), and the CMU Board of Trustees.  *Id*.  Along with filing the original Complaint, Plaintiff's attorney also appeared on at least three television news broadcasts to garner media attention for the lawsuit and to generate publicity for himself.  In making these television appearances, Plaintiff's attorney not only grossly

4

exaggerated Coach Hilt's alleged "punch" to Plaintiff's chest, he also repeatedly emphasized the untrue allegations that Coach Hilt and others at CMU had "retaliated" against Plaintiff because he reported the fist-bump incident.[2]

Defendants answered the Complaint on September 4, 2025 (ECF No. 11). On September 11, 2025, Defendants then provided Plaintiff with their Rule 26(a) initial disclosures, which included the body camera footage related to the CMU Police Department's investigation that occurred in response to Plaintiff's text message to Liam Stumpf. (**Exhibit E**, pp. 4-5).[3] Again, in its entirety, Plaintiff's message to Liam stated "Time to die my friend." (**Exhibit D**).

Thereafter, on September 26, 2025, Defendants filed their Motion to Dismiss and for Judgment on the Pleadings (ECF No. 13). On the same day, Defendants also served on Plaintiff's attorney their Motion for Rule 11 Sanctions (**Exhibit A**).

Defendants' Motion for Rule 11 Sanctions noted that the original Compliant asserted two claims under 42 U.S.C. § 1983 against CMU and the individual Defendants in their "official capacities" – one claim for violation of Plaintiff's First Amendment rights (*i.e.*, the report regarding Coach Hilt's alleged "assault") and

---

[2]  *See  e.g.*,  www.fox2detroit.com/news/cmu-player-allegedly-punched-baseball-coach-files-lawsuit-against-university;  and  www.wnem.com/2025/08/22/lawyer-claims-cmu-baseball-player-was-retaliated-against-speaking-up.

[3] In addition, Defendants provided Plaintiff with copies of all of the documents attached hereto marked as CMU0001-0043. (*See* **Exhibit E**, p. 5). Defendants also subsequently provided Plaintiff with a copy of the written police report from that investigation. (**Exhibit F**, CMU Police Incident Report, CMU0044-0053).

another claim for violation of bodily integrity.  (*See* **Exhibit A**, ¶¶ 5-13). Defendants explained that the § 1983 claims were barred by the Eleventh Amendment and that the claims were not supported by existing law or by a nonfrivolous argument to extend, modify, or reverse exiting law.  As such, Defendants explained that the § 1983 claims violated Rule 11(b)(2).

The Motion for Rule 11 Sanctions also explained that the § 1983 claim for violation of bodily integrity violated Rule 11(b)(2) because Coach Hilt's alleged "punch," even as described in the Complaint, failed to state a constitutional claim under the controlling case law. (**Exhibit A**, ¶¶ 35-41).

In addition, Defendants explained that many of the factual contentions in the Complaint lacked evidentiary support, and that Plaintiff and his attorney did not have the good faith belief that evidentiary support for the factual contentions would be found after a further opportunity for investigation and discovery.  *See* Fed. R. Civ. P. 11(b)(3). In particular, Defendants took issue with the allegations that the Defendants somehow "retaliated" against Plaintiff by, among other things, causing the CMU Police to investigate Plaintiff's threatening text message to Liam Stumpf and by suspending Plaintiff from the baseball team. (**Exhibit A**, ¶¶ 20-32). Defendants even pointed out to Plaintiff that those factual contentions were disproved by police body camera footage.  (**Exhibit A**, ¶ 31).

In response to Defendants' Motion for Rule 11 Sanctions, Plaintiff took *some*

corrective action.  On October 20, 2025, Plaintiff filed the First Amended Complaint on the stipulation of the parties (ECF No. 19).  With the First Amended Complaint, Plaintiff dropped the § 1983 claim for retaliation and dismissed CMU, Amy Folan and Jacob Sabol as a parties.  Certainly, those changes represented a step in the right direction toward correcting the Rule 11 violations.

However, the First Amended Complaint continued to violate Rule 11 in numerous other respects. Most notably, while Plaintiff dropped the retaliation claim, the First Amended Complaint continued to assert the untrue factual contentions that Plaintiff somehow suffered retaliation when the CMU Police investigated his threatening text message to Liam Stumpf (ECF No. 19, PageID.192, ¶ 75(b)).

The First Amended Complaint also continued malign Coach Hilt's character and reputation by falsely claiming that he had "a reputation for excessive drinking" and that, in the past, he slept on the field during a period of intoxication (ECF No. 19, PageID.181 and 190, ¶¶ 18 and 69).  Not only are these factual contentions completely devoid of any evidentiary support whatsoever, they are also entirely irrelevant to any claim actually pleaded in the First Amended Complaint.

Furthermore, the First Amended Complaint continued to assert the § 1983 claim against Coach Hilt for violation of bodily integrity.  (ECF No. 19, PageID.188-189, ¶¶ 53-59).  This is the only federal claim included in the First Amended Complaint, and the sole basis for the Court's subject-matter jurisdiction.

Consequently, on October 24, 2025, Coach Hilt was forced to file his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 21). Plaintiff responded on November 14, 2025 (ECF No. 23). The motion remains pending.

## STANDARD OF REVIEW

Whether to award sanctions under Rule 11 is within the discretion of the district court. *Merritt v. Internation Ass'n of Mechanist and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010). "A district court abuses its discretion if it bases its ruling on erroneous view of the law or a clearly erroneous assessment of the evidence." *Id*. (citation omitted).

## LEGAL ARGUMENT

By March, 2025, Plaintiff already was on the verge of quitting baseball and dropping out of school. He was failing most of his courses, and as a walk-on player without a scholarship or a meaningful work ethic, there was nothing keeping him at CMU. Accordingly, when Coach Hilt gave him an innocuous fist bump to his chest before the baseball game on March 2, 2025, Plaintiff irrationally saw the incident as his opportunity to somehow obtain a payout as he exited CMU.[4]

However, it would have been one thing if Plaintiff had limited his "get-rich-quick" scheme to making exaggerated claims regarding the fist bump. Such a

---

[4] *See e.g.*, **Exhibit C**, at CMU0039 (Plaintiff's teammate reported to FPS that Plaintiff said that "he [was] going to get Coach Hilt's money and transfer.").

lawsuit would have proceeded along the lines of other types of dignity torts. The lawsuit would have been limited to a state-law claim for assault and battery, and the issues would have involved whether Coach Hilt's fist bump was truly harmful or offensive to Plaintiff in light of the apparent/implied consent that a student-athlete necessary gives his coach for certain amounts of physical contact.

Of course, a lawsuit along those lines never would have led to the large payout that Plaintiff sought. Rather, that type of lawsuit would have been mostly symbolic and involved only nominal damages. Consequently, Plaintiff and his attorney vainly tried to make this lawsuit into something that it clearly was not – a federal lawsuit involving constitutional claims for violations of bodily integrity and retaliation against Plaintiff for exercising his First Amendment rights.

Rule 11 is specifically designed to prevent this type of distortion of the facts and the law for the purpose of manufacturing a lawsuit that plainly does not exist. Therefore, for the reasons explained more fully below, the Court should GRANT Coach Hilt's Motion for Rule 11 Sanctions and award the sanctions requested herein.

## I. PLAINTIFF AND HIS ATTORNEY HAVE VIOLATED RULE 11

Plaintiff and his attorney violated both Rule 11(b)(2) and (b)(3) in multiple ways.

### A. Plaintiff's attorney violated Rule 11(b)(2) by including the § 1983 claim in the First Amended Complaint.

There is no justification for the decision by Plaintiff's attorney to include the § 1983 claim for violation of bodily integrity in the First Amended Complaint.

9

Whether the claim was pleaded against Coach Hilt in his official capacity or in his individual capacity, the claim always lacked discernible legal merit under the controlling case law for the reasons that Coach Hilt has already explained in his Motion to Dismiss (ECF No. 21, PageID.219-230) and Reply Brief (ECF No 24). Moreover, Defendants very clearly explained to Plaintiff that the claim violated Rule 11 and gave him the opportunity under the 21-day safe harbor provision to take appropriate corrective action. (**Exhibit A**, ¶¶ 35-41; *see also* ECF No. 13, PageID.114-115). Accordingly, Plaintiff's attorney violated Fed. R. Civ. P. 11(b)(2) by continuing to present the claim to the Court.

## B. Plaintiff and his attorney violated Rule 11(b)(3) by including factual contentions that Plaintiff suffered "retaliation."

Perhaps even more troubling are the violations of Rule 11(b)(3). In relevant part, Rule 11(b)(3) provides that an attorney's signature on a pleading certifies that to the best of his knowledge, information and belief, formed after "an inquiry reasonable under the circumstances" the factual contentions have "evidentiary support," or if specifically so identified, "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id*.

In the case at bar, the First Amended Complaint went out of its way to include salacious and untrue allegations claiming that Plaintiff somehow suffered "retaliation" – even after Plaintiff dropped the § 1983 claim for retaliation from the original Complaint. Not only did Plaintiff and his attorney fully understand that these

10

factual contentions lacked evidentiary support, but they also knew that the contentions were completely untrue. They knew the allegations were untrue because Plaintiff had personally participated in the CMU police investigation regarding his text message to Liam Stumpf and because Plaintiff's attorney had the police body camera footage in his possession to review for nearly **six weeks** before he filed the First Amended Complaint. (*See* **Exhibit E**).  Consequently, the decision to include these allegations in the pleading is a particularly egregious violation of Rule 11.

> **1.**     *A comparison between the allegations in the First Amended Complaint and the information available to Plaintiff demonstrates that Plaintiff violated Rule 11(b)(3).*

The Court should compare the allegations that Plaintiff suffered retaliation for reporting the fist-bump incident, as those allegations appear in the First Amended Complaint, with the actual information that has long been known to Plaintiff. Such a comparison demonstrates that Plaintiff failed to conduct "an inquiry reasonable under the circumstances" in violation of Rule 11(b)(3).

The imposition of a Rule 11 sanction is not a judgment on the merits.  *Willy v. Coastal Corp.*, 503 U.S. 131, 138; 112 S.Ct. 1076 (1992) (citation omitted). "Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id*. Accordingly, the Court may examine the information that Plaintiff knew before filing the First Amended Complaint and compare that information to the pleadings.

In the case at bar, Plaintiff alleges that on April 18, 2025, he sent a teammate, Liam Stumf, a Snapchat message that stated "time to die." (ECF No. 19, PageID.184, ¶ 35).[5] Plaintiff further alleges that phrase "time to die" was a "mantra" that had been frequently used by the CMU baseball team in social medial posts. *Id*. However, when asked during discovery for the documentary evidence supporting his contentions that the phrase "time to die" was a team "mantra" and/or that the phrase was frequently used in the team's social media posts, Plaintiff was unable to produce anything that actually supported his position. (**Exhibit G**, Plaintiff's Responses to Defendants' Request for Documents, ¶¶ 12-13).

Nevertheless, according to Plaintiff, the day after he sent the message to Liam, two police officers arrived at his dormitory, questioned him about the message, and then left when Plaintiff told the officers that the phrase was a team motto. (ECF No. 19, PageID.185, ¶¶ 36-37).

In addition to these allegations, Plaintiff further contends that later in the day on April 19, 2025, he went to the baseball stadium with his parents to pick up his belongings, and that while they were leaving the stadium, the CMU Police Department called and advised him that he was not allowed on stadium grounds until further notice. (PageID.185, ¶¶ 42-44).

---

[5] In actuality the text message stated "Time to die my friend." (**Exhibit D**).  As such, Plaintiff fails to even correctly quote his own text message.

Plaintiff then alleges that "[a]gents of CMU" used Plaintiff's Snapchat message to Liam Stumpf "as a pretext to retaliate against him for speaking out against the assault that occurred by suspending him from the team," so his parents "pack[ed] up his things and moved him back to their home in Ohio." (PageID.185-186)   He further claims that this supposed "retaliation" constitutes Intentional Infliction of Emotional Distress by Coach Hilt:

> 75b.   [Defendant Hilt] [r]etaliat[ed] against [Plaintiff] by sending the police to his dorm room and blocking him from entering the stadium for his belongings due to a "death threat," knowing full well that [Plaintiff] was reciting a team mantra.  (PageID.192)

Again, it is necessary to compare these allegations with the objective truth. With respect to the allegation that Liam reported the text message to the police, the telephone conversation between Liam and CMU Police Officer Sargeant Trent Case was captured on body camera. (**Exhibit H**, Axon_Body_3_Video_2025-04-19_0922).[6]  As the body camera footage reveals, Sgt. Case called Liam on the morning of April 19, 2025 (at approximately 9:22 a.m.) after Sgt. Case had previously learned about the text message. During the call, Liam informed Sgt. Case that the day before, Plaintiff had a "meeting" with someone from CMU regarding "court stuff" (*Id*., at 1:41-1:58; see also **Exhibit W**, p. 3). The meeting referenced by Liam was the meeting that Plaintiff and his attorney attended on April 18, 2025,

---

[6] The audio begins at approximately 30 seconds.  A transcript of the recording is also attached as **Exhibit W**.

regarding the investigation that FPS was conducting into Plaintiff's allegation that Coach Hilt punched him in the chest (**Exhibit C**, CMU 0035-0036).

Liam advised Sgt. Case that at the April 18 meeting, Plaintiff learned for the first time that Liam had previously participated in the same FPS investigation and that he shared "information" about Plaintiff that Plaintiff "did not think a lot of people knew." (**Exhibit H**, at 1:52-1:58). Liam's statement to Sgt. Case was consistent with the report that FPS Director, Dan Rinke, eventually prepared, which explained that on April 7, 2025, Liam told Mr. Rinke that there are pictures of bruising on Plaintiff's chest (supposedly caused by Coach Hilt's punch) that were "fake." (**Exhibit C**, at CMU 0039). Liam explained that Plaintiff used a "cupping rehabilitation tool" to create the bruise. (*Id*., at CMU 0039).

During his conversation with Sgt. Case on the morning of April 19, 2025, Liam explained that because he had revealed that information, Plaintiff was upset, which prompted Plaintiff to send the threatening text. (**Exhibit H**, at 2:32-2:42; **Exhibit W**, p 4). Liam also told Sgt. Case that he was "surprised" by text message, but not "super fearful;" however, he thought that Plaintiff's message needed to be brought the coaches' attention. (*Id*., at 2:43-3:42). Liam also confirmed that while Plaintiff would say those things, he never said it directly to Liam before, which was another reason for his concern (*Id*., at 3:45-4:17). Sgt. Case agreed that the fact that Plaintiff sent the "time to die" message directly to Liam, as opposed to just saying

14

the phrase out loud, was his concern too.  (*Id*., at 4:17-4:39; **Exhibit W**, p. 6).[7]

A few minutes after Liam and Sgt. Case ended their call, Plaintiff left a vitriolic voicemail message on Liam's cell phone. (**Exhibit I**, Voicemail).[8] In the voicemail message, an angry-sounding Plaintiff complained, among other things, that Liam was "making up rumors" about him.  *Id*.

In conjunction with this angry voicemail, Plaintiff also sent **__another__** text message to Liam, which was cryptic in its language but clearly hostile in tone (**Exhibit J**, Plf's Text; *see also* **Exhibit F** at CMU 0048 and 0053).  The text stated, in part, "if your (sic) gonna pull this – Never forget – Gas in the fire Liam – Get ready if you wanna do shit like this." (**Exhibit J**).

At the time that Plaintiff left the voicemail and sent the second text message to Liam, he apparently was not aware that Liam had just spoken with Sgt. Case and that the police had begun their investigation. Plaintiff's voicemail and second text message were reported to CMU Police later that morning.

> ### 2. *The recorded conversation between Plaintiff and the police officers further demonstrates a violation of Rule 11(b)(3).*

Shortly after ending his telephone call with Liam, Sgt. Case and another CMU police officer, Detective Bailey, went to Plaintiff's dormitory and spoke with him.

---

[7] A photograph of Liam's phone showing the text message from Plaintiff was eventually provided to the CMU Police Department.  (**Exhibit D**).

[8] See also **Exhibit X**, which is a transcript of the voicemail message.

(ECF No. 19, PageID.185, ¶ 37).  That conversation was also recorded. (**Exhibit K**, Axon_Body_3_Video_2025-04-19_0948).[9]  During the conversation, Sgt. Case asked Plaintiff if he knew why the officers were there, to which Plaintiff said he was suing CMU, and that "everyone was trying to get [him] on the little things lately." (*Id*., at 2:18-2:26).  Plaintiff also insisted that the "whole team throughout the whole year" used the phrase "time to die."  (*Id*., at 2:28-2:45; **Exhibit Y**, p. 3).

However, Plaintiff admitted that he texted Liam that message because Liam "tried to snitch on him" and that Plaintiff wanted to see what Liam would say "as a joke." (*Id*., at 2:45-2:55).  Sgt. Case then pointed out to Plaintiff that he directed the message specifically to Liam and not to the entire team.  (*Id*., at 3:15-3:21). Sgt. Case also asked Plaintiff what was his intention in sending the text message to Liam, to which Plaintiff responded he "wanted to see how [Liam] would react" to see if Liam "snitched" on him about a rumor that someone made up (*Id*., at 4:15-4:31; **Exhibit Y**, p. 5).  Plaintiff also said that he was "really fucking pissed off" and that others were "pissed off" at him because he was trying to get the "pitching coach fired"  (*Id*., 7:14-7:21).  He also acknowledged that some teammates were saying that he "put a fake bruise" on himself but that was just a rumor.  (*Id.*, at 7:22-7:38).

Stated otherwise, Plaintiff knows that he sent the "time to die" text message to Liam because he was angry that Liam reported to FPS that he faked the bruise on

---

[9] A transcript of the recording is attached as **Exhibit Y**.

his chest. Plaintiff also knows that the police officers were merely conducting a good-faith investigation into his text message, which reasonably appeared on its face to be a threat. Yet, in the First Amended Complaint, Plaintiff tries to portray the police investigation as an act of retaliation. Thus, sanctions are warranted.[10] *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir., 2023) (holding that "a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know – or after reasonable investigation should have known – are false or wholly unsupported.")

### 3. *Other recorded conversations further demonstrate the violation of Rule 11(b)(3).*

The First Amended Complaint also creates the misimpression that Plaintiff was suspended from the team as retaliation because he reported the fist bump incident (ECF No. 19, PageID.185, ¶ 39 and PageID.192, ¶ 75(b)). Plaintiff tries to create this misimpression despite knowing that his temporary suspension was merely intended to allow the police the time they needed to finish their investigation.

Moreover, it was Plaintiff who chose to respond to the reasonable police

---

[10] It is also interesting to note that while Plaintiff told the police officers that it was only a "rumor" that he had faked the bruise on his chest, he was extremely reluctant to provide anyone copies of the photographs showing the bruise. During the meeting with Dan Rinke on April 18, 2025, Plaintiff's attorney promised to promptly provide FPS with copies of the photographs, but he never did so. (**Exhibit C**, CMU 0036). In addition, both the original Complaint and First Amended Complaint reference the photographs, but neither pleading attached the photographs. It was not until *after* Plaintiff served his Rule 26(a) disclosures, and *after* Defendants' attorney repeatedly asked for the photographs, that Plaintiff's attorney finally provided copies.

investigation, by quitting the baseball team, moving out of his dormitory, and returning to his parents' home in Ohio. The First Amended Complaint references the telephone conversation between Plaintiff, his parents, and Sgt. Case. (ECF No. 19, PageID.186, ¶ 44).  The call occurred at approximately 2:36 p.m., on April 19, 2025. (**Exhibit L**, Axon_Body_3_Video_2025-04-19_1436).  During the call, Plaintiff and his parents told Sgt. Case that they were leaving and that Plaintiff would not be back on CMU's campus ever again (*Id*., at 7:25-8:13; **Exhibit Z**, pp 10-11).

In addition, during the call, Sgt. Case asked Plaintiff whether he had left the voicemail message on Liam's phone earlier that morning (*Id*., at 4:34-5:33).  Plaintiff **<u>did</u>** leave a vitriolic voicemail on Liam's phone shortly before Sgt. Case arrived at his dorm room.  (**Exhibit I**).  However, Plaintiff denied that he had done so (**Exhibit L**, at 5:05-5:27). Plaintiff also denied that he sent the second threatening text message (*Id*.; **Exhibit Z**, pp 6-7)  That was a lie too (**Exhibit J**).

Then, on following day, April 20, 2025, Plaintiff sent emails his professors asking to convert his courses from in-person to online, explaining that he had moved off campus and returned to Ohio. (**Exhibit M**, Emails). At that point, without knowing how long the suspension might last, Plaintiff chose to no longer participate the baseball team.  Baseball requires in-person participation; remote attendance is not possible. Yet, the First Amended Complaint intentionally distorts reality by suggesting that Plaintiff somehow was not allowed to finish the season with the team

because he was suspended, when Plaintiff knows full well that he *chose* to leave the team (*See* ECF No. 19, PageID.186, ¶ 41 and PageID.192, ¶ 75(c)).

The First Amended Complaint also makes a passing reference to another teammate, Trevor Busyn, who was also suspended from the game on April 19, 2025, for making his own inappropriate Tik Tok post. (PageID.186, ¶ 43). However, the First Amended Complaint states that Trevor's post stated "Free 12" (a reference to Coach Hilt's jersey number), when, in fact, Plaintiff knows the post actually stated "#rip12." (**Exhibit N**, Tik Tok post, CMU 0026). Sgt. Case and Detective Bailey interviewed Trevor on April 19, 2025, and their conversation was recorded. (**Exhibit O**, Axon_Body_3_Video_2025-04-19_1053).[11] Despite having a copy of that recording, **and** a copy of Trevor's actual Tik Tok post, Plaintiff and his attorney **still** misrepresented the language of Trevor's post. (PageID.186, ¶ 43).

It is also necessary to view Plaintiff's allegations that he suffered "retaliation" in the overall context of the other facts. The day after the fist bump, Plaintiff reported the incident to Coach Sabol (ECF No. 19, PageID.182, ¶ 20). At the time, Plaintiff did not complain that he had been injured. (**Exhibit P**, CMU 0017).[12] Rather, Plaintiff merely had been embarrassed because he thought that Coach Hilt singled him out for not paying attention. In response, Coach Sabol asked Coach Hilt to have

---

[11] A transcript of the recording is attached as **Exhibit AA**.

[12] **Exhibit P** is Coach Sabol's written statement which was provided as part of CMU's investigation.

a coach-to-player conversation with Plaintiff regarding Plaintiff's overall concerns, which occurred.  (ECF No. 19, PageID.182, ¶ 24).

It is undisputed that for more than two weeks after Plaintiff and Coach Hilt met, Plaintiff expressed **<u>no</u>** further concern regarding the fist-bump incident to anyone on the coaching staff or in CMU's Athletic Department. Moreover, when Plaintiff eventually decided to report the incident as an "assault," CMU took his allegations very seriously and **<u>immediately</u>** began the investigation through FPS.[13]

However, when Plaintiff learned that others were reporting that he had faked the bruise, he lashed out.  He sent a text message to Liam Stumpf stating "Time to die my friend."  (**Exhibit D**).  While Plaintiff claims that he was merely relaying the team motto, Plaintiff cannot provide **<u>any</u>** documentary evidence whatsoever to show that the phrase "time to die" was ever the team's official motto and/or that the phrase was frequently used on social media.  (**Exhibit G**, ¶¶ 12-13).  Indeed, Plaintiff's claim that the message was merely a friendly greeting is belied by the other text message and voicemail that he sent to Liam.  (**Exhibit I** and **Exhibit J**).

Of course, Plaintiff was suspended from the baseball game that was scheduled

---

[13] On November 20, 2025, Dan Rinke, the Director of CMU's Faculty Personnel Services emailed Coach Hilt and advised him of the investigation.  (**Exhibit Q**, at CMU 0004-0005).  Mr. Rinke also tried to schedule a meeting with Plaintiff, but he initially declined to respond to Mr. Rinke's emails.  (**Exhibit R**, Email Chain, CMU 0018-0019).  Eventually, however, a meeting was scheduled through Plaintiff's attorney's office, which occurred on April 18, 2025.

to be played on April 19, 2025, so that the CMU Police could investigate the matter. It was Plaintiff and his parents who chose to respond to that reasonable investigation by quitting the baseball team, moving back to Ohio, and vowing to never return to CMU. (**Exhibit L**, at 7:25-8:13).[14] Under these known circumstances, it is incredibly disingenuous for Plaintiff to claim that he was retaliated against and "unjustly suspended" without knowing whether he remained on the team. (ECF No. 19, PageID.186, ¶ 41 and PageID.192, ¶ 75(c)).[15]

## II.     REQUESTED SANCTION FOR RULE 11 VIOLATIONS

Assuming for the sake of argument that Plaintiff had the good-faith belief that that Coach Hilt's fist bump to his chest was harmful or offensive, and assuming further that Plaintiff did not fake the photographs of the bruising, then Plaintiff *might have* been able to bring a state-law assault and battery claim against Coach Hilt.

However, Plaintiff and his attorney instead chose to try to distort the facts and the law to create an action that never existed – *i.e.*, a federal lawsuit based on

---

[14]  Sgt. Case informed Brian Nolasco and Coach Sabol that Plaintiff "packed up and left to go home" in response to the temporary suspension. (**Exhibit S**).

[15]  While the "Introduction" forms no part of the pleading, it is noteworthy that Plaintiff repeats many of the same false allegations in the Introduction including the following: (1) that "[t]his case involves an elaborate coverup perpetrated by [CMU] and its agents"; (2) that "CMU wrongfully retaliated against one of their own student-athletes in an attempt to sweep the event under the rug and avoid accountability"; and (3) "[a]fter suspension from one game, [Plaintiff] was ostracized from the team without any notification and left wondering if he will ever be able to play [baseball] again." (ECF No. 19, PageID.178-179).  **All** of these factual contentions violate Rule 11(b)(3).

violations of bodily integrity and retaliation.  Presumably, Plaintiff did so because he believed that by portraying the lawsuit in a more salacious way, he would be able to garner media attention for the suit and thereby try to force Coach Hilt's employer, CMU, to pay far more to settle this case than the nominal damages that it is actually worth – assuming that there is any liability at all.  Indeed, this is the exact approach that Plaintiff took.[16]

Recognizing this point makes the Rule 11 violations even worse. The allegations in the First Amended Complaint that violate Rule 11 in this case are asserted against an individual. In an effort to pressure CMU, Plaintiff and his attorney chose to needlessly attack Coach Hilt's character and reputation and then disregard the harm caused to him as collateral damage. In short, the violations of Rule 11 in this case are inexcusable, and they should lead to meaningful sanctions.

The imposition of Rule 11 sanctions requires a showing of "objectively unreasonable conduct[.]" *First Bank of Marietta v. Harford Underwriters Ins. Co*., 307 F.3d 501, 517 (6th Cir. 2002).  Any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Dearborn Street Bldg. Associates, LLC v. Huntington Nat. Bank*, 411 Fed. Appx. 847, 852 (6th Cir. 2011) (citation omitted).  This includes an award of attorney

---

[16] *See* www.fox2detroit.com/news/cmu-player-allegedly-punched-baseball-coach-files-lawsuit-against-university; and www.wnem.com/2025/08/22/lawyer-claims-cmu-baseball-player-was-retaliated-against-speaking-up.

fees in appropriate circumstances.  *Id*.

In the case at bar, Plaintiff refused to take appropriate corrective action in response to the Motion for Rule 11 Sanctions and instead filed a First Amended Complaint that continued many of the violations. Plaintiff's course of action caused attorney fees on Coach Hilt's behalf.  Attached hereto as **Exhibit U** is the affidavit of Ryan K. Kauffman, which provides a detailed description of the $16,898.00 in attorney fees incurred in this matter between October 21, 2025 (when Plaintiff filed the First Amended Complaint) and November 18, 2025.[17]  This amount establishes a useful benchmark for imposing monetary sanctions because it demonstrates in economic terms the additional work caused by Plaintiff's decision to file the First Amended Complaint rather than to dismiss the action due to lack of federal-question jurisdiction.

The advisory committee notes for the 1993 amendments to Rule 11 provide that if a monetary sanction is imposed, "it should ordinarily be paid into the court as a penalty."  *Id*.  In this case, Coach Hilt respectfully requests that the Court order Plaintiff's attorney, Todd F. Flood, and Flood Law PLLC, to pay five thousand dollars ($5,000) as a sanction into the Court for the violation of Rule 11(b)(2) for including the bodily integrity claim in the First Amended Complaint. This sanction

---

[17] The affidavit references the State Bar of Michigan 2023 Economics of Law Survey Results.  A copy of the survey is attached hereto as **Exhibit V**.

recognizes that under Fed. Civ P. 11(c)(5)(A), the Court will not impose a monetary sanction against a represented party for a violation of Rule 11(b)(2).[18]

Coach Hilt further requests that the Court order Plaintiff, Dean Brown, to personally pay the amount of seven thousand five hundred dollars ($7,500) as a sanction for his violations of Fed. R. Civ. P. 11(b)(3) that are outlined above. Plaintiff not only knew that the factual contentions that he suffered retaliation lacked evidentiary support, he also knew that those contentions were completely false. Therefore, a monetary sanction against Plaintiff is also appropriate.[19] *See Rentz v. Dynasty Apparel Industries, Inc.*, 556 F.3d 389, 400 (6th Cir. 2009) ("[A]lthough it is clear that Rule 11 is not intended to be a compensatory mechanism in the first instance, it is equally clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation.")

Beyond these monetary sanctions, Coach Hilt respectfully suggests that nonmonetary sanctions are also appropriate in this case. Rule 11 expressly provides that the sanctions imposed for a violation of the Rule "may include nonmonetary directives." Fed. R. Civ. P. 11(c)(4). The advisory committee notes for the 1993

---

[18] The sanction should be imposed against Todd F. Flood because he was the attorney who signed the First Amended Complaint. (ECF No. 19, PageID.194).

[19] Alternatively, Coach Hilt requests that the order imposing monetary sanctions for the violations of Rule 11(b)(3) be against Plaintiff and his attorney jointly and severally. The order may direct the monetary sanction paid either directly to Defendant Hilt or into the Court, as the Court directs.

amendments further provide that the Court has a variety of possible nonmonetary sanctions available for violations of Rule 11, such as an order of admonition, reprimand, or censure. *Id.*

In the case at bar, a nonmonetary sanction in the form of an Order of Admonition or Reprimand will serve Rule 11's goal of deterrence. The most significant damage inflicted by the violations of Rule 11 in this case have been to Coach Hilt's character and reputation. This damage was caused because Plaintiff's attorney, Todd F. Flood, failed adhere to the high standards required for attorneys practicing in the United States District Court for the Eastern District of Michigan. An Order of Admonition or Reprimand from this Court against Mr. Flood will undoubtedly serve to deter these types of violations in the future.  To the extent that the Court chooses to do so, it may also rely on E.D. Mich. L.R. 83.22(d) to fashion an appropriate Order.

## **CONCLUSION**

For the foregoing reasons, Defendant Aaron Hilt respectfully requests that this Honorable Court GRANT his Motion for Rule 11 Sanction, and that the Court enter an Order imposing the sanctions requested herein against Plaintiff and his attorneys, Todd F. Flood and Flood Law PLLC, for the violations of Rule 11(b)(2) and (b)(3).

Dated: December 4, 2025　　　By: */s/ Ryan Kauffman*
　　　　　　　　　　　　　　Ryan K. Kauffman (P65357)
　　　　　　　　　　　　　　Fraser Trebilcock Davis Dunlap & Cavanaugh, P.C.
　　　　　　　　　　　　　　Attorneys for Defendant Hilt

## CERTIFICATION OF COMPLIANCE

In accordance with E.D. Mich L.R. 5.1(a), the Undersigned certifies that the document above complies with the Rule's requirements, including double-spacing (except for quotations and footnotes), one-inch margins, and 14 point font.

*Respectfully submitted*,

Dated: December 4, 2025         By: */s/ Ryan Kauffman*
                                Ryan K. Kauffman (P65357)
                                Fraser Trebilcock Davis Dunlap & Cavanaugh, P.C.
                                Attorneys for Defendant Hilt

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I electronically filed the foregoing document with the United States District Court for the Eastern District of Michigan Northern Division, via Pacer, which said Pacer also serves a copy on all counsel of record.

*/s/ C A Sczepanski*
C A Sczepanski