# *EXHIBIT A*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEAN BROWN,

    Plaintiff                                   Case No. 1:25-cv-12575

v.                                                          Hon. Thomas L. Ludington

CENTRAL MICHIGAN UNIVERSITY,
AARON HILT in his personal and official
Capacity as Assistant Coach of Central
Michigan University Baseball, JACOB SABOL
in his official capacity as Head Coach of Central
Michigan University Baseball, and AMY FOLAN
In her official capacity as Athletic Director for
Central Michigan University,

    Defendants
_____/

## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

**NOW COME** Defendants CENTRAL MICHIGAN UNIVERSITY BOARD OF TRUSTEES[1], AARON HILT, JACOB SABOL and AMY FOLAN (the "CMU Defendants") by and through their attorneys Fraser Trebilcock Davis Dunlap and Cavanaugh, P.C., and for their Motion for Rule 11 Sanctions state as follows:

---

[1] Central Michigan University Board of Trustees is improperly identified as "Central Michigan University" in the caption of the Complaint. Pursuant to M.C.L. § 390.551 and Mich. Const. 1963, art 8, § 6, the proper defendant to sue and be sued on behalf of the university is the Central Michigan University Board of Trustees.

1

1.      Pursuant to Fed. R. Civ. P. 11(b), every pleading, motion, and other paper signed by an attorney certifies that to the best of his/her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the claims are warranted by existing law (or by a non-frivolous argument for extending, modifying, or reversing the existing law) and that the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

2.      If the Court determines that a party has violated Rule 11(b), the Court may impose an appropriate sanction on the party and/or attorney who committed the violation.  See Fed. R. Civ. P. 11(c)(1). The sanctions may include reasonable attorney fees and other expenses directly resulting from the violation.  See Fed. R. Civ. P. 11(c)(4).

3.      This motion is made in accordance with Fed. R. Civ. P. 11(c)(2), which requires that the motion be made separately from any other motion.  The motion must be served on the other party, but may not be filed with the Court unless corrective action is not taken within 21 days after service.  Fed. R. Civ. P. 11(c)(2).

4.      The Complaint that was filed in this matter violates Rule 11 in numerous respects as stated more fully herein.

### A. CMU and the Individual Defendants in their Official Capacities are Entitled to Immunity under the Eleventh Amendment.

5. In the Complaint, Plaintiff has asserted two claims under 42 U.S.C. § 1983 against CMU and the individual Defendants in their official capacities (ECF No. 1, PageID.14-18). These claims are not supported by existing law or by a nonfrivolous argument to extend, modify or reverse exiting law. Thus, the § 1983 claims violate Rule 11.

6. Central Michigan University Board of Trustees is a body corporate created by the Michigan Constitution. In relevant part, Mich. Const. 1963, art 8, § 6, provides that "[o]ther institutions of higher education established by law having authority to grant baccalaureate degrees shall each be governed by a board of control which shall be a body corporate." The members of the board of control are appointed by the governor. *Id.*; *see also* M.C.L. § 390.551.

7. The Central Michigan University Board of Trustees is "arm of the state" and entitled to immunity under the Eleventh Amendment with respect to Plaintiff's claim under 42 U.S.C. § 1983. See *Heike v. Guevara*, 654 F.Supp.2d 658, 669 (E.D. Mich, 2009). Moreover, a suit for money damages against state officials in their official capacities is a suit against the state itself. *Kentucky v. Graham*, 473 U.S. 159, 165-166; 105 S.Ct. 3099 (1985).

8. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

3

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment has been applied to bar a citizen from suing even his own state in federal court absent consent. *Bd. of Trs. of Ala. v. Garrett*, 531 U.S. 356, 363; 121 S. Ct. 955, 148 L.Ed.2d 866 (2001).

9. While the question of whether the Eleventh Amendment is applicable in any given case is ultimately one of federal law, this Court will consider the position of CMU under state law in making that determination. *See Estate of Ritter by Ritter v. Univ. of Mich.*, 851 F.2d 846, 848 (6th Cir. 1988) (relying on *Long v. Richardson*, 525 F.2d 74 (6th Cir. 1975)); *see also Guertin v. State*, 912 F.3d 907, 937 (6th Cir. 2019).

10. Here, CMU is created by the Michigan Constitution and is established by state law. The members of its board of control are appointed by the governor, and CMU receives funding from the State of Michigan. *See* Mich. Const., art 8, § 6 and M.C.L. § 390.551. Moreover, the state's potential liability for a judgment in this case creates a strong presumption that CMU is an arm of the state. S*ee Kreipke v. Wayne State Univ*. 807 F.3d 768, 775 (6th Cir. 2015); *see also* M.C.L. § 600.6095 (providing that "[w]hen any judgment or decree is obtained against any corporate body . . . now or hereafter having charge or control of any state institution, the amount thereof shall be included and collected in the state tax and paid to the person

4

entitled thereto.")

11. Further, it is also clear that CMU has not waived its Eleventh Amendment immunity in this case. The Michigan Legislature has not consented to have CMU subjected to suit in federal court. Moreover, while Congress may abrogate a state's immunity under the Eleventh Amendment by exercising its power under § 5 of the Fourteenth Amendment, it is well settled that Congress did not do so with 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 340-341; 99 S.Ct. 1139; 59 L.Ed.2d 358 (1979).

12. In addition, CMU is not a "person" within the meaning of 42 U.S.C. § 1983. In relevant part, 42 U.S.C. § 1983 provides that "[e]very **person** who, under color of [state law] subjects, [a] person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." *Id*. (emphasis added). The United States Supreme Court has unequivocally held that "a State is not a person within the meaning of §1983." *Will v Mich. Dep't of State Police*, 491 U.S. 58, 71; 109 S.Ct 2304; 105 L.Ed.2d 45 (1989).

13. To the extent Plaintiff alleges claims under 42 U.S.C. § 1983 against CMU, and to the extent Plaintiff seeks monetary relief under § 1983 claims against CMU's officials in their official capacities, Plaintiff and his attorneys have violated

Rule 11, which entitles Defendants to sanctions, including their reasonable attorney fees.

### B. Plaintiff Lacks a Good-Faith Basis to Believe that the § 1983 Claims have Evidentiary Support.

14. Plaintiff's § 1983 claims also violate Rule 11 because Plaintiff lacks the good-faith belief that the factual contentions underlying the claims have evidentiary support and/or that the claims will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

#### 1. The Retaliation Claim lacks evidentiary support.

15. The Complaint erroneously alleges that because Plaintiff exercised his First Amendment rights "Defendant CMU" took action that "negatively impacted and excluded [him]" including (1) "treating him differently at team practices" (2) "suspending him from games" (3) "removal from team group chats" (4) "removal from the NIL club" and (5) "barring Plaintiff from the baseball stadium." (ECF No. 1, PageID.15, ¶ 63).

16. As an initial matter, the retaliation claim is pleaded against "Defendant CMU" only. *Id*. Yet, with the claim, Plaintiff inexplicably seeks to impose monetary liability against the Coach Sabol and Athletic Director Folan in their "official capacities."

17. To be held liable under § 1983, each individual defendant must have committed a violation through his or her "own individual actions" and must have

6

been "personally involved" in the unconstitutional action. *Pineda v Hamilton County,* 997 F.3d 483, 490 (6th Cir. 2020) (citations omitted).

18.   None of the factual allegations in the Complaint state what actions either Coach Sabol or Athletic Director Folan supposedly took to retaliate against Plaintiff. Therefore, the claims fail for that reason alone.

19.   Furthermore, the factual contentions lack any discernible merit, and in fact, are known by Plaintiff to be false.

(a)   <u>Plaintiff's claim that he was removed from team group chats and the NIL Club violates Rule 11</u>.

20.   Taking the alleged retaliatory actions described in Paragraph 63 of the Complaint slightly out of order, it is clear that Plaintiff always lacked a good-faith basis to allege that Coach Sabol or Athletic Director Folan removed him from team group chats or from the NIL Club as an act of retaliation. Indeed, Plaintiff knows that these allegations are false.

21.   According to the allegations in the Complaint, on April 19, 2025, Brian Nolasco, Senior Assistant Athletic Director of Institutional Support Services advised Plaintiff that he was suspended from the baseball game that was scheduled to be played that day (ECF No. 1, PageID.11, ¶ 43).

22.   Within a few hours thereafter, Plaintiff had moved out of his dorm room so that he could return to his home in Ohio (*Id.*, PageID.12, ¶ 46). Plaintiff and his mother also spoke with Sargent Trent Case, an officer with the CMU Police

7

Department (*Id.*, ¶ 49).  The call between Sargent Case and Plaintiff's mother occurred on April 19, 2025 at approximately 2:36 p.m.  The call was recorded, and a copy of the recording was provided to Plaintiff with CMU's Initial Disclosures. During the call, Plaintiff and his mother stated that Plaintiff was moving to his home in Ohio, and that he would never return to CMU's campus.

23. Consequently, by the early afternoon on April 19, 2025, Plaintiff had *already* made the decision to quit the baseball team, leave CMU, and return to his home in Ohio.  These facts are undisputed, and Plaintiff has known these facts since that time.

24. Nevertheless, for purposes of this lawsuit, Plaintiff falsely alleges that Amy Folan and Coach Sabol somehow retaliated against him by removing him from "team group chats."  (ECF No. 1, PageID.15, ¶ 63). More specifically, Plaintiff claims that later at night on April 19, 2025, Plaintiff's parents were removed from a group messenger chat used by the CMU baseball parents (*Id.*, PageID.13, ¶ 52).

25. Plaintiff always lacked a good-faith basis to believe that evidentiary support might exist to support his allegation that he suffered retaliation when his parents were removed from the group chat.   There are no facts alleged anywhere in the Complaint to suggest that any individual Defendant played any role whatsoever in removing Plaintiff's parents from the group chat for CMU baseball parents or that the individual Defendants removed Plaintiff from any other "team group chat."

8

26. Furthermore, as the other allegations in the Complaint demonstrate, Plaintiff's parents were removed from the group chat **after** Plaintiff quit the baseball team, left CMU and vowed to never return. Under these circumstances, Plaintiff's allegation that the individual Defendants somehow retaliated against him by removing him from group chats violates Rule 11.

27. The same is true for Plaintiff's allegation that on April 23, 2025, Plaintiff received notice that he had been removed from the "NIL Club" (ECF No. 1, PageID.13, ¶ 53). According to this allegation, Plaintiff was removed from the NIL Club four days after he quit the baseball team and left CMU vowing never to return. Plaintiff always lacked a good-faith basis to allege that his removal from the NIL Club was an act of retaliation.

> (b) <u>Plaintiff's claim that he suffered retaliation when he was suspended from "games" and "barred" from the baseball stadium violates Rule 11</u>.

28. Plaintiff falsely alleges that Coach Sabol and Athletic Director retaliated against him by suspending him from "games" (plural). Plaintiff knows that he was suspended only from a single game on April 19, 2025, and thereafter he quit the baseball team and left CMU.

29. Plaintiff also knows that he was suspended from the single game on April 19, 2025 because he sent a text message stating "Time to die my friend" to his

9

teammate, Liam Stumpf, which the CMU Police Department reasonably investigated as a potential threat.

30. As part of their Initial Disclosures, CMU Defendants provided Plaintiff with the police incident report and all of the body camera footage that captured the CMU Police Department's full investigation into Plaintiff's text message.

31. For more than the entire 21-day safe harbor period for this Rule 11 Motion, Plaintiff and his attorneys have had these materials to review and consider. Therefore, any decision to not take corrective action with respect to the allegation that Plaintiff experienced retaliation when he was suspended from the game on April 19, 2025, violates Rule 11.

32. The same is true regarding Plaintiff's false claim that he suffered retaliation when he was barred from the baseball stadium. Plaintiff and his parents spoke with both Brian Nolasco and Sargent Case on April 19, 2025, regarding that matter. Plaintiff's disingenuous attempt to portray the decision as an act of retaliation perpetrated by Coach Sabol and/or Amy Folan violates Rule 11.

    (c)   <u>Plaintiff's claim that he suffered retaliation when he was treated differently at practice violates Rule 11</u>.

33. Plaintiff also falsely alleges that he suffered retaliation when he was treated differently at practices (ECF No. 1, PageID.15, ¶ 63). Plaintiff does not have a good-faith belief that the factual allegation has evidentiary support, or that the

allegation will likely have evidentiary support after a reasonable opportunity for discovery and investigation. Consequently, the allegation violates Rule 11.

34. Plaintiff alleges that on March 3, 2025, he met with Coach Sabol and later that day discussed the fist-bump incident with Coach Hilt (ECF No. 1, PageID.8, ¶ 25). There are no facts alleged anywhere in the Complaint to even remotely suggest that after that time, Coach Sabol or Athelteic Director Folan treated Plaintiff differently at practice (or to even explain *how* he was treated differently). Plaintiff's conclusory and thread-bare assertion that he suffered retaliation violates Rule 11.

### 2. *The Bodily Integrity Claim is not supported by existing law and also lacks evidentiary support.*

35. The Complaint asserts a claim under 42 U.S.C. § 1983 against Coach Hilt, Coach Sabol and Athletic Director Folan for an alleged violation of bodily integrity (ECF No. 1, PageID.16- 18, ¶¶ 68-77).

36. Plaintiff's § 1983 for alleged violation of bodily integrity is not warranted by existing law (or by a non-frivolous argument for extending, modifying, or reversing the existing law) and that the factual contentions underlying the claim have no evidentiary support and will not have evidentiary support after a reasonable opportunity for further investigation or discovery. Consequently, by asserting the claim, Plaintiff and his attorneys have violated Rule 11.

11

37. According to the allegations in the Complaint, when Coach Hilt gave the fist bump to Plaintiff's chest on March 2, 2025, it knocked the wind out of Plaintiff and caused him to fall backward (ECF No. 1, PageID.7, ¶ 19). Plaintiff also claims that he later had a "deep bruise" on his chest (*Id.*, ¶ 21).

38. Plaintiff knows that these factual allegations are fabricated or exaggerated and that there is no evidentiary support for the allegations.

40. More importantly, Plaintiff's attorneys know that any bodily integrity claim based on the incident as described in the Complaint is not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing the existing law.

41. As the Sixth Circuit has held in *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996):

> "[A] substantive due process claim is quite different than a claim of assault and battery under state tort law.... [S]ubstantive due process is concerned with violations of personal rights of privacy and bodily security.... [T]he substantive due process inquiry ... must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

*Id.* (citation omitted).

42. Furthermore, there are no facts alleged to allow Plaintiff to assert the § 1983 claim for the supposed violation of bodily integrity against Coach Sabol or

Athletic Director Folan. Indeed, there are no facts alleged to establish the claim that Coach Sabol or Athletic Director Folan acted with deliberate indifference. The bodily integrity claim as asserted against these Defendants is clearly not warranted by existing law.

43. Plaintiff erroneously alleges that some unidentified "Defendants" were "deliberately and callously disregarded a known risk that Defendant Hilt would engage in problematic and abusive conduct resulting in the assault of [Plaintiff]" (ECF No. 1, PageID.16, ¶ 69). To the extent the allegation is intended to assert a claim for a violation of bodily integrity against Coach Sabol or Athletic Director under 42 U.S.C. § 1983, the allegation is devoid of any discernible factual or legal merit.

44. There is absolutely nothing in the Complaint to suggest what Coach Sabol or Athletic Director Folan did or failed to do on or before March 2, 2025, that could possibly constitute deliberate indifference. The claim has no evidentiary support, and there is no basis for Plaintiff to believe that the claim will ever have evidentiary support. In addition, the claim is not supported by existing law or a good-faith argument to modify, expand or reverse existing law. Therefore, the claim violates Rule 11.

WHEREFORE, Defendants respectfully request that this Honorable Court GRANT their Motion for Rule 11 Sanctions, and that the Court enter an award of

sanctions against Plaintiff and his attorneys, and that the award include Defendants' reasonable attorney fees incurred.

*Respectfully submitted*,

Dated: September 26, 2025   By:/s/ *Ryan Kauffman*
Ryan K. Kauffman (P65357)
Fraser Trebilcock Davis Dunlap & Cavanaugh, P.C.
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I served the foregoing upon all counsel of record by US Mail and through Electronic Mail.

/s/ C A Sczepanski
C A Sczepanski