UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEAN BROWN,

                    Plaintiff,                              Case Number 25-12575
                                                            Honorable David M. Lawson

v.

AARON HILT,

                    Defendant.

_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS, DENYING MOTION FOR SANCTIONS, AND GRANTING MOTION TO QUASH SUBPOENA

Defendant Aaron Hilt, an assistant baseball coach for Central Michigan University, sucker-punched one of CMU's pitchers, plaintiff Dean Brown, before a baseball game against Western Kentucky University in March 2025.  Brown proved that he could take a punch, but he wasn't happy about it, and he filed the present lawsuit, attempting to make a federal case out of the incident.  Hilt believes that Brown has exaggerated the seriousness of the encounter and has moved to dismiss the amended complaint and to impose sanctions against Brown.  Hilt also sent a subpoena for Brown's smartphone records, which Brown has moved to quash.  The Court heard the parties' arguments on June 25, 2026.  The allegations in the amended complaint are not sufficient to sustain a federal constitutional tort against Hilt, and without a federal hook, the state law tort claims cannot stay in federal court.  The sanctions motion is procedurally defective and lacks substantive merit.  And since the case will be dismissed, the subpoena will be quashed as it no longer serves a purpose.

I.

For Brown's federal claim, he contends that Hilt, a state actor because he worked for a Michigan public university, violated Brown's right to bodily integrity, which is protected by the Due Process Clause of the Fourteenth Amendment. To advance such a claim of constitutional magnitude, Brown must plead facts in his amended complaint that plausibly suggest that Hilt's "conduct . . . [wa]s 'so brutal, demeaning, and harmful as literally to shock the conscience.'" *Domingo v. Kowalski*, 810 F.3d 403, 410-11 (6th Cir. 2016) (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)). To meet that task, he alleges the following narrative, which the Court takes as true at this stage of the case. *Guertin v. State*, 912 F.3d 907, 916 (6th Cir. 2019).

In 2025, Brown pitched for CMU's baseball team. When CMU played on Sundays, at the coaches' direction, its pitchers embraced a "Sunday fun day" demeanor. The pitchers also had a pregame routine of lining up and fist-bumping their pitching coaches, including defendant Aaron Hilt, after warmups. They observed those customs when they played Western Kentucky University on Sunday, March 2, 2025.

But that Sunday took on a different mood. Following their warmup, the CMU "pitchers were relaxed, telling jokes," which aligned with their customary Sunday attitude. ECF No. 19, PageID.180. However, Hilt denounced Brown's participation in the pitcher's activities, allegedly targeting him and instructing him to focus. After that encounter, the pitchers lined up for their pregame-fist-bump ritual with Hilt. When Hilt reached Brown, Brown "was slightly turned" away, talking to teammates. *Ibid.* Hilt allegedly paused and glared at Brown. According to Brown, Hilt then forcefully punched him in the chest, knocking the wind out of Brown and causing him to step backward. The plaintiff also alleges that the punch left a bruise on his chest, evidenced by photographs taken the next day.

Brown's teammates spread word of the incident on social media.  The next day, Brown reported it to CMU head baseball coach Jacob Sabol, who seemed to be aware of it already.  Later, on March 3, Hilt reached out to Brown to try to minimize the incident.  Hilt also tried to contact Brown's parents.  Two weeks later, Brown reported the incident to Amy Folan, CMU's athletic director.  On March 19, Brown pitched in what was to become his final game for CMU; he was benched after that and not allowed to participate in any more baseball games.  He contacted Folan on March 20, and she merely asked Brown if he had spoken to a deputy about the incident.

Brown's relationship with CMU athletics spiraled downward after that.  A few weeks later, he sent a teammate a Snapchat message using a team colloquialism, which the teammate took as a threat and reported it to the police, who questioned Brown about it.  Hilt suspended Brown from the team and later banished him from the stadium.  His parents were removed from a group messenger chat used by CMU baseball parents.  In late April, he was removed from the NIL (name, image, and likeness) club.  His baseball career was put on hold, he transferred to another college, and he lost a year of eligibility.

Brown filed his original complaint in August 2025 against Hilt, CMU, Sabol, and Folan.  The defendants answered the complaint and served a motion for sanctions.  Thereafter, Brown filed an amended complaint, which is now the operative pleading in the case.  He dropped the other defendants and pleads four counts against Hilt alone.  Count I is the federal claim for violation of Brown's Fourteenth Amendment substantive due process right to bodily integrity, via 42 U.S.C. § 1983, based on the punch.  Count II alleges an assault and battery claim under state law.  Count III asserts a negligence claim against the defendant in both his individual and official capacities.  And Count IV alleges a claim for intentional infliction of emotional distress against Hilt for an alleged cover-up and retaliation for Brown's reporting of the punch.

II.

Hilt has moved to dismiss the federal count with prejudice for failure to state a viable constitutional claim, and he asks the Court to decline to exercise supplemental jurisdiction over the state law claims.  The federal claim is styled as if it were brought against Hilt solely in his official capacity.  However, the allegations in the complaint and the plaintiff's brief indicate that the label is not correct, and that Brown intends to sue Hilt only in his individual capacity.  The plaintiff clarified that point at oral argument on June 25, 2026, and the Court will accept that characterization of the claim.  Moreover, the plaintiff's official capacity claim cannot proceed because it amounts to a claim against the state that would be barred by the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *see also Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc) (extending Eleventh Amendment immunity "to actions against state officials sued in their official capacity for money damages"); *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) (clarifying that an official capacity claim against an employee of a state agency function as a claim against the state); *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775-81 (6th Cir. 2015) (holding that a Michigan university governed by the same state constitutional provision and corresponding statutory schemes as CMU constituted an arm of the State of Michigan).

A.

Hilt mainly invokes Federal Rule of Civil Procedure 12(b)(6) in his motion to dismiss.  To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'  Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief."  *Fabian v. Fulmer*

*Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, before a court considers documents "integral to the claims" and that are referenced in the complaint, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) (*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)).  "[C]ourts may take judicial notice of facts in a public record that 'are not subject to reasonable dispute' — such as the court's ultimate resolution of a prior case." *Blackwell v. Nocerini*, 123 F.4th 479, 487-88 (6th Cir. 2024); *see also Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC,* 46 F.4th 454, 457 (6th Cir. 2022) ("While the question of whether to grant a Rule 12(b)(6) motion to dismiss is typically confined to the pleadings, we may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").  However, beyond those materials, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

Brown's constitutional violation claim is presented via 42 U.S.C. § 1983, through which individuals may seek redress in court against state actors for violations of rights secured by the Constitution and laws of the United States.  To state a claim under that section, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

Hilt, as an employee of a state public university, is a state actor, satisfying the second requirement under section 1983.  *Ernst*, 427 F.3d at 358.  Brown looks to the Fourteenth Amendment to support the first requirement.

The Fourteenth Amendment prohibits states from depriving "person[s] of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  This clause embodies "procedural and substantive due process components."  *Guertin*, 912 F.3d at 917.  The substantive components safeguard "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citation modified).  "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It prohibits the government from infringing on "fundamental rights" without sufficient justification.  *Glucksberg*, 521 U.S. at 720.  To establish a substantive due process claim, a plaintiff must show that "(1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been

deprived through arbitrary and capricious action." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 648 (6th Cir. 2015) (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008)).

One fundamental right that the Due Process Clause protects is a person's "right to bodily integrity." *Guertin*, 912 F.3d at 918 (citing *Glucksberg*, 521 U.S. at 720).  The right to bodily integrity enshrines a person's "'right to be free from . . . unjustified intrusions on personal security' and 'encompasses freedom from bodily restraint and punishment.'" *Ibid.*  (quoting *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977)).  To establish a violation of this right, a plaintiff must demonstrate that a government actor's bodily intrusion "shocks the conscience." *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).

The shocks-the-conscience test includes at least two considerations.  One is whether the state actor's offending conduct is based on a legitimate purpose. *Webb*, 828 F.2d at 1159.  Another is the brutality of the physical intrusion into the plaintiff's bodily space. *Lillard*, 76 F.3d at 725. The "conduct . . . [must be] 'so brutal, demeaning, and harmful as literally to shock the conscience.'" *Domingo*, 810 F.3d at 410-11 (quoting *Webb*, 828 F.2d at 1158).  The rigor with which the test is applied "is the way in which courts prevent transforming run-of-the-mill tort claims into violations of constitutional guarantees." *Guertin*, 912 F.3d at 923; *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.").

Brown contends that Hilt's sucker-punch had no legitimate pedagogical purpose, and therefore Hilt should be held accountable under the Due Process Clause.  He relies on *Webb v. McCullough* for that argument.  In *Webb*, a school principal decided to send a group of high school students home from an extracurricular school trip for misconduct.  828 F.2d at 1154.  After he

decided so, one of the students locked herself in a bathroom.  *Ibid.*   Enraged, the principal repeatedly slammed his shoulder into the bathroom door until it swung open, knocking the student into the wall.  *Ibid.*   The principal then "thrust the door open again, and it struck [the student] again, throwing her to the floor."  *Ibid.*   He grabbed the student from the ground, threw her against the wall, and slapped her.  *Ibid.*   Because the principal meted out the repeated blows without any disciplinary reason, the Sixth Circuit held that his conduct constituted a "brutal and inhumane abuse of . . . official power" that "literally shock[ed] . . . the conscience."  *Id.* at 1159.

Hilt attempts to justify his conduct, suggesting that the amended complaint's allegations that he punched the plaintiff after he had corrected the plaintiff for his pregame joking when the defendant was slightly turned away from him offer a plausible purpose for the punch: "a coaching moment about paying attention."  ECF No. 21, PageID.228.  That does not say much about Hilt's coaching style, where he apparently believes that assault is among a baseball coach's legitimate teaching tools.  Moreover, at this stage of the case, the Court must draw reasonable inferences in the plaintiff's favor, not the defendant's.  Viewed through that lens, the amended complaint more naturally alleges that Hilt acted in an angry moment out of frustration rather than discipline.  Recall that, according to the pleading, Hilt paused in front of Brown, looked at him with disdain, and then punched him — without first attempting to get his attention verbally.  *See* ECF No. 19, PageID.181.  The amended complaint further alleges that an eyewitness stated that the punch "was thrown for no apparent reason."  *Ibid.*

However, the lack of a legitimate purpose is not dispositive.  *Lillard*, 76 F.3d at 726.  Where a plaintiff alleges "physical abuse at the hands of state actors," the conduct must transcend mere puerile misbehavior before it enters unconstitutional territory.  *Domingo*, 810 F.3d at 410; *see also Lillard*, 76 F.3d at 725; *Webb*, 828 F.2d at 1158.  To distinguish a conscience-shocking bodily-

integrity claim from a tort claim, courts assess whether "'the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'"  *Webb*, 828 F.2d at 1158 (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)).  That description of the task could have been written with the facts of this very case in mind.

Compare the description of the facts in *Webb* with the account in *Lillard v. Shelby County Board of Education*.  In *Lillard*, a fourteen-year-old girl's soccer coach, who was also her teacher, "detained her after class."  76 F.3d at 719.  He then verbally abused her, "held her chin with one hand," "slapped her across the face" with the other, and threatened her "after the slapping."  *Ibid.* The Sixth Circuit held that while the coach's actions "were careless and unwise," they fell "far short of 'brutal,' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute" a constitutional violation."  *Id.* at 726.  It observed that in "contrast to *Webb*, the blow inflicted" was "neither severe in force nor administered repeatedly."  *Ibid.*  It further observed that "the slap did not result in any physical injury."  *Ibid.*  The court certainly criticized the teacher's conduct.  *Ibid.* ("[W]e do not mean to suggest that school systems should tolerate a teacher who slaps a student in anger.").  But it reasoned that "it is simply inconceivable that a single slap could shock the conscience," even if done "for no legitimate purpose."  *Ibid.*

*Lillard* describes the nature of the facts that Brown has pleaded in his amended complaint. Like the single slap in *Lillard*, Hilt delivered a single punch, not repeated, harsh blows.  Also like *Lillard*, Hilt's alleged punch did not cause serious injury.  As alleged, the punch here caused bruising, a relatively minor harm.  *See Saylor v. Bd. of Educ. of Harlan Cnty.*, 118 F.3d 507, 515 (6th Cir. 1997) (collecting cases where the Sixth Circuit found that bruises resulting from a state

actor's corporal punishment were not a conscious-shocking, severe injury); *see also Peterson v. Baker*, 504 F.3d 1331, 1337 (11th Cir. 2007) (characterizing bruising as a minor injury, counseling against a finding that conduct shocked the conscience); *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 601 (11th Cir. 2010) (same); *Kurilla v. Callahan*, 68 F. Supp. 2d 556, 564 (M.D. Pa. 1999) (concluding that bruising from a punch "could hardly be described as 'severe'" injury). Although abusive, Hilt's alleged conduct represents a garden-variety, common-law battery, *see*, *e.g.*, *Baska v. Scherzer*, 283 Kan. 750, 763, 156 P.3d 617, 626 (2007); 6A *Corpus Juris Secundum, Battery* § 13 (2026) (using a punch to describe the textbook tort of battery, albeit in the context of transferred intent), rather than an act that was "'brutal,' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to" shock the conscious, *Lillard*, 76 F.3d at 726. To use the *Lillard* court's words, "it is simply inconceivable that a single" punch to a college student athlete that yields only a bruise "could shock the conscience," even if unwarranted. *Ibid.*

Cases addressing whether a single punch shocks the conscience reinforce this conclusion, uniformly holding that where, as here, no severe injury occurs, a single punch does not shock the conscience. *See, e.g.*, *McCants v. City of Mobile*, 752 F. App'x 744, 749 (11th Cir. 2018) (holding that a state official's "seem[ingly] unwarranted" punch "to [the plaintiff's] chest" did not constitute a conscience-shocking constitutional violation); *Kurilla*, 68 F. Supp. at 564 (holding that a teacher's single punch to a student's chest that caused only bruising and anxiety attacks did not shock the conscience); *Thomas v. Bd. of Educ. of W. Greene Sch. Dist.*, 467 F. Supp. 2d 483, 491 (W.D. Pa. 2006) (holding that a teacher's "single punch to the shoulder hard enough to cause" a twelve-year-old plaintiff to "'jerk back'" and suffer "bruising and tenderness" did not shock the

conscience and violate his constitutional rights).  Some of those cases directly relied on *Lillard*. *E.g.*, *Thomas*, 467 F. Supp. 2d at 491; *Kurilla*, 68 F. Supp. at 564.

Brown's reliance on *Webb* does not help him with his task of demonstrating shocks-the-conscience brutality.  In *Webb*, the state actor administered repeated blows.  Here, Hilt delivered a single punch.  In *Webb*, the state actor inflicted severe force, striking a high schooler twice with a door, knocking her to the ground, slinging her into a wall, and slapping her in the face.  Here, Hilt levied minor force, punching Brown once, which, as alleged, left only a bruise.  Those differences demonstrate why the conduct in *Webb* shocked the conscience.  The alleged conduct here falls short.

Brown's response to the motion also criticizes the defendant's citation of *Domingo v. Kowalski*, 810 F.3d 403 (6th Cir. 2016).  There, the Sixth Circuit held that a special education teacher at an elementary school who "gagg[ed] one student with a bandana to stop him from spitting, strapp[ed] another to a toilet to keep her from falling from the toilet, and forc[ed] yet another to sit with her pants down on a training toilet in full view of her classmates to assist her with toilet-training," did not shock the conscience.  *Id.* at 406.  It reasoned that the defendant "attempted to toilet-train and control her special-education students in furtherance of valid pedagogical goals," so even if the "educational and disciplinary methods . . . may have been inappropriate, insensitive, and even tortious[,] they were not unconstitutional." *Id.* at 416.  Brown contends that *Domingo* does not apply because Hilt lacked a legitimate reason for punching him, so the defendant's argument against his bodily-integrity claim misses the mark.

That argument, however, misconstrues Hilt's reliance on *Domingo*.  Hilt does not present *Domingo* as a close factual analog, nor does he meaningfully anchor his argument in *Domingo*. His point is narrower.  He observes only that in *Domingo*, the Sixth Circuit supplied a four-factor

test for corporal punishment cases in educational settings, one that balances (1) the pedagogical justification for such punishment, if any, against (2) the degree of force used, (3) the actor's intent, and (4) the resulting injury to determine whether the punishment shocked the conscience. ECF No. 21, PageID.228. From there, Hilt argues that assuming the *Domingo* framework applies in this context, *Lillard* remains controlling because "no facts . . . suggest that the punch was 'so vicious as to constitute a violation of substantive due process,'" even if no pedagogical purpose existed. *Id.* at PageID.228-29 (quoting *Lillard*, 76 F.3d at 726). Notably, Brown's response to the defendant's motion to dismiss does not engage with *that* argument, let alone address *Lillard* in meaningful detail.

Brown also cited *Duchin v. E. Upper Peninsula Intermediate School District*, No. 21-161, 2022 WL 969679 (W.D. Mich. Mar. 31, 2022), at oral argument, contrasting its finding that a teacher's use of force upon a disabled student did not violate the constitution because there was a legitimate purpose for the teacher's actions. Again, the lack of a legitimate purpose is only one factor; it does not alone furnish support for the required shocks-the-conscience brutality showing.

The amended complaint alleges that Hilt delivered but a single punch that caused Brown to suffer only a bruise. Those facts do not support a conclusion that Hilt's conduct shocks the conscience so as to plead a viable claim that Hilt violated Brown's right to bodily integrity within the meaning of the Fourteenth Amendment. Count I of the amended complaint will be dismissed.

B.

That is not to say that Brown has failed to plead legitimate state-law claims. The amended complaint's allegations demonstrate that he should be able to take those further, but not in this Court.

It is true that federal courts have supplemental jurisdiction over state claims if they are "so related to" the federal claims over which the court has original jurisdiction "that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  In this action, the Court has subject-matter jurisdiction under 28 U.S.C. § 1331 over the plaintiff's section 1983 claim.  *See* ECF No. 19, PageID.179.  His state claims under Michigan law are related to the federal claims because they arise from the same factual circumstances.  Nonetheless, section 1367(c) confers discretion upon district courts to decline supplemental jurisdiction over state claims if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In exercising this discretion, courts are to consider several factors, including whether declining jurisdiction would lead to wasteful proceedings due to the overlap between state and federal law, whether it would cause unfairness to a party, whether it would undermine federal-state comity, and whether a party has manipulated the case to reach the federal forum.  *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010).

Here, Brown's only federal claim will be dismissed.  The Sixth Circuit has stated repeatedly that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well."  *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citations omitted).  A dismissal of federal claims under Rule 12(b)(6) creates a "strong presumption" in favor of dismissal of state-law claims, which may be overcome only in "unusual circumstances."  *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996).  No such circumstances are present here.  Therefore, the Court will dismiss the plaintiff's remaining state-law claims without prejudice.

III.

Hilt also has filed a motion asking the Court to impose sanctions on Brown under Civil Rule 11(c), which essentially exposes a party or attorney to costs and attorney's fees for filing an illegitimate, factually or legally unsupportable claim, or when a claim is filed for an improper purpose, such as harassment. Fed. R. Civ. P. 11(b)(1), (3), (c)(1). In the motion, Hilt lays out a scenario where Brown conspired with others to exaggerate the seriousness of his injury by concocting a photograph of his chest that did not accurately depict the bruise that resulted from the blow. Hilt also accuses Brown of trying to manipulate and intimidate witnesses who were to be interviewed as part of an investigation conducted by CMU's Faculty Personnel Office.

Hilt's attorney served the plaintiff with a motion for sanctions under Civil Rule 11 on September 26, 2025. He filed another, different motion for sanctions on December 4, 2025. ECF No. 27.

"A court may impose sanctions under Rule 11 if: '[(1) an attorney] present[s] to the court a pleading, written motion, or other paper . . . for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions [do not] have evidentiary support or, if specifically so identified, will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are [not] warranted on the evidence or, if specifically so identified, are [not] reasonably based on belief or a lack of information.'" *Bojicic v. DeWine*, 145 F.4th 668, 671 (6th Cir. 2025) (quoting Fed. R. Civ. P. 11(b)). "Rule 11 imposes both a requirement of 'prefiling inquiry into both the facts and the law,' and 'a continuing responsibility to review and reevaluate

- 14 -

. . . pleadings and where appropriate modify them to conform to Rule 11.'" *Ibid.* (quoting Fed. R. Civ. P. 11, Adv. Committee Note to 1983 Amend.; *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335-36 (6th Cir. 1988)).

To promote self-regulation and minimize court intervention, Rule 11 imposes a critical procedural prerequisite commonly referred to as the "safe-harbor" rule. *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997). That rule requires a party seeking sanctions to serve the motion "under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Courts must strictly enforce the safe-harbor rule, *Ridder*, 109 F.3d at 294, and "[f]ailure to comply with" it precludes sanctions, *Penn, LLC v. Prosper Bus. Dev. Corp.,* 773 F.3d 764, 767 (6th Cir. 2014).

Hilt's sanctions motion must be denied for two reasons. First, the defendant failed to comply with Rule 11's safe harbor provision because the unfiled motion that he served on the plaintiff is not the same sanctions motion that he filed with the Court. Although the Sixth Circuit has not squarely addressed whether the Rule 11 motion filed with the court must be the same motion served on the opposing party during the safe-harbor period, *Wershe v. City of Detroit*, No. 21-11686, 2024 WL 3625312, at *4 (E.D. Mich. Aug. 1, 2024), the text of the safe-harbor rule provides a clear answer.

The text of Rule 11(c)(2) uses the definite article "the" before "motion," *ibid.*, thereby referring to a particular motion. *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767 (2023) (explaining that when a statute uses the definite article, it refers to a particular thing); *see also In re MCP No. 185*, 124 F.4th 993, 1010 (6th Cir. 2025) (same); *Lewis v. Nationstar Mortg.*, 5 F. Supp. 3d 890, 900 (E.D. Mich. 2014) (same). The remainder of the sentence confirms the point. It provides that

"the motion" must be served and then, after the 21-day safe-harbor period has elapsed, may be filed. Fed. R. Civ. P. 11(c)(2). The rule therefore contemplates one motion, not one motion served and another filed. If the filed motion differs in substance from the served motion, then the motion that was filed was never served, and the motion that was served was never filed. Either way, the requirements of Rule 11(c)(2) have not been met.

Many courts that have considered the question have concluded that compliance with the safe-harbor provision requires service of the very motion later presented to the court. *See, e.g.*, *Wershe*, 2024 WL 3625312, at *4; *Whaley v. Definitive Roofing & Specialty Coatings, LLC*, No. CV 5: 24-339-DCR, 2026 WL 983092, at *4 (E.D. Ky. Apr. 13, 2026); *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2014 WL 1080765, at *3 (N.D. Tex. Mar. 18, 2014); *Robinson v. Alutiq-Mele, LLC*, 643 F. Supp. 2d 1342, 1350-51 (S.D. Fla. 2009); *O'Connell v. Smith*, No. CV 07-0198-PHX-SMM, 2008 WL 477875, at *2 (D. Ariz. Feb. 19, 2008); *Wells Fargo Home Mortg., Inc. v. Taylor*, Nos. 04-825 & 04-841, 2004 WL 1771607, at *1 (E.D. La. Aug. 5, 2004).

The defendant's attorney, therefore, did not comply with the 21-day safe-harbor rule: despite the rule's mandate to serve the plaintiff with the motion for sanctions and wait 21 days before filing it, he did not do so. True, before Brown filed the amended complaint, the defendant served him with a motion for sanctions. That motion did include one of the same arguments that he now presses in his present motion for sanctions — that his bodily integrity claim lacks merit under *Lillard*. However, the rest of the present motion differs from the motion that he served before the filing of the amended complaint. The prior motion challenged specific factual contentions that tied discrete retaliatory acts to Folan and Sabol, or misrepresented the number of games for which the plaintiff was suspended. Hilt admits that the amended complaint removed those specific allegations, curing those issues. The present motion challenges separate factual

- 16 -

contentions related to Hilt himself, not to Sabol or Folan.  In fact, it reads like a malicious prosecution complaint, which will require substantial factual development for determination.  Because the previously served motion is not the motion that he filed, the previously served motion does not satisfy the safe-harbor rule.  Therefore, the defendant's failure to comply with Rule 11's safe-harbor rule precludes sanctions.  *Penn, LLC*, 773 F.3d at 767.

Second, even if the single argument that appears in both motions — that Brown's bodily-integrity claim had no basis in law — survives Rule 11's safe-harbor requirements, sanctions are not warranted under Rule 11(b)(2).  Rule 11(b)(2) makes "frivolous 'legal contentions'" sanctionable.  *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023).  However, frivolous legal contentions do not include those that are held meritless after a careful analysis of the law.  *See id.* at 529.  Rather, frivolous legal contentions are those that are "'obviously without merit' under existing law and unsupported by a good-faith argument to change or extend the law."  *Id.* at 528.

Brown's bodily-integrity claim was not frivolous.  Although it lacks merit because neither the punch nor the resulting injury (a bruise) was so severe and brutal as to shock the conscience, it was not obviously meritless.  Bodily integrity claims are inherently fact- and context-driven.  *See, e.g.*, *Domingo*, 810 F.3d at 410; *Lillard*, 76 F.3d at 725; *Webb*, 828 F.2d at 1158.  And although *Lillard* held that a single slap that caused no severe harm did not shock the conscience and its reasoning maps onto this case, no binding precedent has directly held that a single punch that leaves only a bruise does not shock the conscience as a matter of law.  As a result, existing law left open to Brown the option to attempt to advance the opposite holding.  Brown's inclusion of the bodily-integrity claim is not sanctionable.

IV.

During discovery, Hilt's attorney served on Verizon a subpoena seeking Brown's smartphone records from March 1, 2025, to April 30, 2025.  Brown moved to quash the subpoena under Civil Rule 45, arguing that it seeks protected information, imposes an undue burden, and exceeds the scope of discovery permitted by Civil Rule 26.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Here, all claims will be dismissed, albeit some without prejudice, so there are no longer any "claim[s] or defense[s]" that are "relevant" or "proportional to the needs of the case."  Because the subpoena to Verizon no longer serves a useful or legitimate purpose, the Court will quash it.

V.

The amended complaint does not plead facts sufficient to support a plausible federal cause of action.  The Court will not exercise discretionary supplemental jurisdiction over the state-law claims.  There is no valid basis to impose sanctions on the plaintiff or his attorney.  The subpoena seeking the plaintiff's smartphone records no longer serves a valid purpose.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the amended complaint (ECF No. 21) is **GRANTED**.

- 18 -

It is further **ORDERED** that Count I of the amended complaint pleading a claim under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that all other counts of the amended complaint pleading state-law claims are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the defendant's motion for sanctions (ECF No. 27) is **DENIED**.

It is further **ORDERED** that the plaintiff's motion to quash the subpoena to Verizon, Inc. (ECF No. 29) is **GRANTED**. The defendant forthwith shall notify Verizon, Inc. of this ruling and recall the subpoena.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 14, 2026